IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01630-NYW

WELLS FARGO BANK, N.A.,

    Plaintiff,

v.

ROBERT D. MORDINI, JR., d/b/a
MATURA INTERNATIONAL SERVICES, an unincorporated business organization,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This action is before the court on Defendant Robert D. Mordini, Jr. d/b/a Matura International Services' ("Defendant" or "Mr. Mordini") Motion to Dismiss (or "Motion") [Doc. 14, filed August 16, 2021]. This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the Parties [Doc. 10], and the Order of Reference dated August 5, 2021 [Doc. 11]. The court has considered the Motion to Dismiss, associated briefing, and the applicable case law. For the following reasons, the Motion to Dismiss is **DENIED**.

## BACKGROUND

    This action arises out of damages that Plaintiff Wells Fargo Bank N.A. ("Plaintiff" or "Wells Fargo") incurred "as a result of an overdraft in Defendant's account at Wells Fargo." [Doc. 1 at ¶ 1]. Specifically, on March 23, 2019, a foreign check for $130,890.89 (the "Check") was deposited into the Wells Fargo account (the "Account") of an organization called Matura International Services ("Matura"). [*Id*. at ¶ 14]; *see also* [*id.* at ¶ 4]. Wells Fargo alleges that Mr. Mordini "solely maintained the Account at all times," [*id*. at ¶ 10]; is an "authorized signer on the

Account," [*id*. at ¶ 11]; and Wells Fargo's "records also reflect that [Mr.] Mordini is the sole owner of the Account," [*id*. at ¶ 12]. After the Check was deposited, between April 9 and May 8, 2019, Mr. Mordini withdrew "funds totaling $139,010.000 … from the Account by way of in-branch withdrawals." [*Id*. at ¶ 16]. On May 8, however, "the Check was returned as 'altered'" which resulted in the Account "becoming overdrawn in the amount of $118,102.69 (the 'Overdraft Loss')." [*Id*. at ¶ 17]. By correspondence on August 27 and December 10, 2019, Wells Fargo demanded that Mr. Mordini rectify the Overdraft Loss, but Mr. Mordini failed to do so. [*Id*. at ¶ 19].

Wells Fargo claims that Matura is "a sham entity … and an alias" that Mr. Mordini used "to conduct his personal business." [*Id*. at ¶ 4]. Wells Fargo also avers that Matura was "purportedly formed by way of a Contract and Declaration of an Unincorporated Business Organization … dated January 24, 2005" ("Formation Contract"), [*id*. at ¶ 8], and attaches a copy of the Formation Contract to the Complaint, [Doc. 1-1]. Wells Fargo alleges that Mr. Mordini is liable for the Overdraft Loss of the Account on the basis that Matura is an unincorporated business trust organization ("UBO") "and therefore not legally incorporated," and cites Colorado case law for the proposition that "only a duly formed entity is treated as a separate legal entity from its owners or controlling persons." [*Id*. at ¶ 20]. Wells Fargo initiated this action by filing the operative Complaint on June 15, 2021 and asserts three claims against Mr. Mordini: (1) breach of contract; (2) unjust enrichment; and (3) money had and received. *See* [*id*. at ¶¶ 24–36].

On August 14, 2021, Defendant filed the instant Motion, titled "Motion to Dismiss." However, though not entirely clear, Defendant appears to invoke both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. [Doc. 14]. Plaintiff responded to the Motion on September 7, [Doc. 17], addressing arguments under both Rule 12(b)(6) and Rule 56 standards,

and Defendant filed his Reply on September 21, [Doc. 18]. Thus, the Motion is ripe for determination.

## LEGAL STANDARDS

### I.   Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

The court generally limits its review of a motion to dismiss brought pursuant Federal Rule of Civil Procedure 12(b)(6) to the four corners of the pleadings. In some instances, the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The court may also take judicial notice of undisputed court documents and matters of public record without requiring conversion, but the court may consider those documents only to show their contents, not to prove the truth of matters asserted therein. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## II. Federal Rule of Civil Procedure 56

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

Once the movant demonstrates an absence of evidence supporting an essential element of the nonmovant's claim, the burden shifts to the nonmovant to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy this burden, the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986)). Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment. *See Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990); *accord Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 680 (10th Cir. 2014) (explaining that "conclusory, self-serving, and generalized

denials . . . are insufficient at the summary judgment stage."). Indeed, while the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant[,]" *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016), the nonmovant must point to competent summary judgment evidence, *see Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004), and may not rely on "mere reargument of his case or a denial of an opponent's allegation[,]" *see* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

## ANALYSIS

### I. The Parties' Arguments

Wells Fargo asserts claims for breach of contract (Claim I), unjust enrichment (Claim II), and money had and received (Claim III). [Doc. 1 at ¶¶ 24–36]. Relevant to each of Plaintiff's claims is the allegation that Matura "is a sham entity referred to as an unincorporated business organization and an alias used by Mordini to conduct his personal business." [*Id*. at ¶ 4]; *see also* [*id*. at ¶ 27 ("Because Matura is a UBO and therefore not legally incorporated, Mordini is personally liable for the Overdraft Loss.")].

In the Motion, Mr. Mordini does not specifically address any of Plaintiff's claims for relief. *See* [Doc. 14]. Rather, he moves to dismiss Plaintiff's Complaint on the basis that he is "not individually liable for the debts of" Matura because (1) "Matura is an entity with independent legal existence from Defendant individually," and (2) Mr. Mordini's "only role with respect to Matura is as its general manager." [*Id*. at 1].

#### A. Applicable Standard

Before reaching the substance of the Parties' arguments, this court first pauses to determine the applicable standard given Defendant's invocation of a "Motion to Dismiss," without citation to a particular Rule, as well as Rule 56 and his request that the court review documents outside of

the pleadings. *See generally* [Doc. 14]. The Formation Contract is attached as Exhibit A to the Complaint. *See* [Doc. 1-1]. Given that it is attached to the Complaint and its authenticity is undisputed by either Party, this court could consider it in the context of a motion to dismiss. However, Mr. Mordini also offers his own Affidavit to challenge Wells Fargo's contention that he is an alter ego of Matura. *See* [Doc. 14-1]. Furthermore, Wells Fargo offers additional bank records for the court's consideration in support of its Response. [Doc. 17-2; Doc. 17-3; Doc. 17-4]. In order to appropriately consider both submissions by Plaintiff and Defendant, this court proceeds pursuant to Rule 56 of the Federal Rules of Civil Procedure. With that framework in place, this court turns to analyzing whether there is a genuine issue of material fact as to whether Mr. Mordini can be held liable for the conduct alleged by Wells Fargo in the Complaint or whether he is entitled to judgment in his favor as a matter of law.

**B.     Whether Defendant Has Met His Burden to Show That Matura is a Valid Business Trust**

Mr. Mordini argues that Matura, "as a business organization in trust form, … is a business trust and thus recognized as a legal person under Colorado law. A business trust may be sued as an entity in Colorado law." [Doc. 14 at 5]. In support of his argument, Mr. Mordini relies upon *In re Green Valley Fin. Holdings*, 32 P.3d 643, 645 (Colo. App. 2001) ("*Green Valley*"). [*Id*. at 4–5].

In *Green Valley*, the Colorado Court of Appeals analyzed "whether a trust is in fact a business trust." 32 P.3d at 645. The court first explained that "[a] business trust … is a business organization in trust form." *Id.* (citing Herbert B. Chermside, Jr., Annotation, *Modern Status of the Massachusetts or Business Trust,* 88 A.L.R.3d 704 (1978)). The court observed that the purpose of a business trust is not to hold and conserve a particular property, but "to provide a medium for the conduct of business and the sharing of profits." *Id.* (citing *Koenig v. Johnson,* 163

6

P.2d 746 (1945)). And "the nature of a trust as a business organization is to be determined primarily from the intent of the parties as manifested in the terms of the trust agreement." *Id.* The court also explained that "Colorado has no statutory law authorizing the formation of business trusts," but also recognized that "there are statutory references to this type of entity in other contexts." *Id*. (citing Uniform Commercial Code, Colo. Rev. Stat. § 4-1-201(28) (2000); Consumer Protection Act, *id*. at § 6-1-102(6) (2000); Business Corporation Act, *id*. at § 7-101-401(17) (2000); Uniform Foreign-Money Claims Act, *id*. at § 13-62.1-101(9) (2000); and Unclaimed Property Act, *id*. at § 38-13-102(3.5) (2000)).[1] *See also See also* Colo. Rev. Stat. § 2-4-401(8) (defining "person" as including a "business trust"); Bankruptcy Code, 11 U.S.C. § 101(9)(A) (defining "corporation" as including a "business trust"); *In re Arnold v. Arnold*, No. 13-cv-01036-MSK, 2014 WL 6822332, at *3 n.4 (D. Colo. Dec. 2, 2014).

Applying the court's analysis in *Green Valley* here, I find that Mr. Mordini has not met his burden to establish there is no genuine issue of material fact regarding Matura's status as a *valid* business trust.[2] Apart from the assertion that "Matura, as a business organization in trust form … is a business trust and thus recognized as a legal person under Colorado Law," [Doc. 14 at 5], Mr. Mordini presents zero analysis regarding whether Matura is, in fact, a *valid* business trust, nor does he identify any evidence in support of his assertion that it is. Indeed, he fails to point to an applicable trust agreement at all, *see* [*id.*]—this despite his reliance on *Green Valley*, which

---

[1] Of those statutes cited in *Green Valley*, the following still include "business trust" in the definitions cited in that case: the Uniform Commercial Code, Colo. Rev. Stat. § 4-1-201(26) (defining "person" to include "business trust"); the Consumer Protection Act, *id*. at § 6-1-102(6) (same); and the Uniform Foreign-Money Claims Act, *id*. at § 13-62.1-101(9) (same).

[2] In so ruling, the court does not pass on whether unincorporated business organizations generally are valid business entities under Colorado law.

7

acknowledged that "[t]he nature of a trust as a business organization" is determined by the terms of a trust agreement. 32 P.3d at 645 (citing *Koenig*, 163 P.2d at 746).

Conversely, in opposing the Motion, Wells Fargo attaches and cites to the Formation Contract, *see* [Doc. 17-1], which provides that Matura was formed to "administer[] Company assets" and "protect the administration of the Corpus." *See* [Doc. 17 at 6 (citing [Doc. 17-1 at ¶¶ 19–20])]. Wells Fargo argues that the Motion and Mr. Mordini's Affidavit fail to "describe any assets or the purported business of Matura" under the Formation Contract, and this "lack of information likely results from the fact that Matura is not a valid business trust." [Doc. 17 at 6]. While the court does not reach the same conclusion as Plaintiff regarding Matura's status as a valid business trust, the court finds that Mr. Mordini's failure to address the business or assets of Matura precludes a finding that there exists no genuine material fact in dispute that Matura is a valid business trust. *See Green Valley*, 32 P.3d at 645 (noting the "'Declaration of Purpose' in the trust agreement provide[d] for the 'administration, hypothecation and investment of [trust assets] ... to preserve, conserve, maintain, invest, and develop the assets for the benefit of the beneficiaries,'" but it did "not state that the trust ha[d] been formed for the purpose of conducting a business venture"; and concluding that "when the agreement as a whole [was] considered in light of its stated purpose … , that the trust was not a business trust").

***Formation Contract Alone.*** Mr. Mordini does not dispute the authenticity of the Formation Contract. *See* [Doc. 18]. Instead, he argues that "[t]he Complaint does not set forth facts relevant to analyzing Matura's validity as a business trust under Colorado law," apart from "conclusions that Matura is a sham and that Mordini is individually liable for its debts." [Doc. 18 at ¶ 2]. However, in seeking summary judgment against Plaintiff, it is Mr. Mordini's burden in the first instance to establish that the undisputed facts, viewed in the light most favorable to Wells

8

Fargo, entitle him to judgment as a matter of law. *See Reed v. Bennett,* 312 F.3d 1190, 1194–95 (10th Cir. 2002) (observing that even "[i]f the nonmoving party fails to respond, [a] district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law"). To that end, the Formation Contract does not, standing alone, establish that Matura is a valid business trust as a matter of law. The court notes that, like the trust agreement in *Green Valley*, the Formation Contract here does not state that Matura was "formed for the purpose of conducting a business venture." *Green Valley*, 32 P.3d at 645; *see* [Doc. 17-1]. Moreover, the fact that the Formation Contract purports to authorize Matura to generally carry on a business is not dispositive of whether Matura is, in fact, a valid business trust created for such a purpose. *See* [Doc. 17-1 (stating Matura was formed to "administer[] Company assets" and "protect the administration of the Corpus"); *cf. Green Valley*, 32 P.3d at 645 ("We recognize that the agreement authorizes the trust to carry on a business. However, that fact is not determinative. Trust fiduciaries generally have the power to participate in the operation of a business activity or enterprise.").

*Additional Facts*. Having concluded that the Formation Contract alone does not establish his entitlement to judgment as a matter of law, this court further notes that Mr. Mordini fails to point to any additional undisputed evidence establishing "any assets or the purported business of Matura" as referenced in the Formation Contract. *See* [Doc. 17 at 6]; *see also Green Valley*, 32 P.3d at 645 ("The nature of a trust as a business organization is to be determined primarily from the intent of the parties as manifested in the terms of the trust agreement." (citing *Koenig*, 163 P.2d at 746)). Mr. Mordini does not provide any testimony in his Affidavit of any assets. *See* [Doc. 14-1]. Nor does he attest to any business activity of Matura. [*Id.*]. Accordingly, the court finds

9

that Mr. Mordini has not met his burden to show that he is entitled to judgment as a matter of law that Matura is a valid business trust.

### C. Whether Defendant Has Met His Burden to Show Matura is Not His Alias

In alleging that Matura is a "sham entity," Wells Fargo ultimately seeks to hold Mr. Mordini liable for Matura's debts on the basis that Mr. Mordini was the "alias" of Matura. [Doc. 1 at ¶ 4]. Mr. Mordini challenges Wells Fargo's ability to establish that he is the alias of Matura. *See* [Doc. 14]. In support of his argument, Mr. Mordini cites to his Affidavit [Doc. 14-1], which provides in relevant part as follows:

> 2. Matura … is an unincorporated business organization. Matura is a business organization int rust form, and was created by the Contract and Declaration attached as **Exhibit A** to Plaintiff's Complaint.
> 3. I am the General Manager of Matura. I am not a party to the agreement under which Matura was formed. I have never been a trustee of Matura, nor have I ever had any other role with respect to Matura except as General Manager. I do not do business as Matura.
> 4. I was appointed General Manager by action of the trustee of Matura, as reflected in the March 8, 2012 Minutes of Matura International Services Appointment Resolution, a true and correct copy of which is attached to the contemporaneously filed Motion as **Exhibit 2**.
> 5. The Wells Fargo bank account that is the subject of this litigation, along with all funds that it has ever contained, has only ever belonged to Matura.
> 6. My only involvement with the Matura bank account that is the subject of this litigation has been in my capacity as General Manager of Matura, and I have only ever used the aforementioned account as authorized by my appointment as General Manager.

[Doc. 14-1 (emphasis in original)]. Mr. Mordini also cites to the Minutes, which reflect that he was appointed as the General Manager of Matura by "J. Roberts, First Trustee." [Doc. 14-2]. Based on those documents, Mr. Mordini claims that he is "neither a trustee nor settlor of the Matura business trust, and he does not do business as Matura" and thus is "not a proper party to be held liable for any debt attributed to Matura." [Doc. 14 at 5 (citations omitted)].

Mr. Mordini fails, however, to provide any authority for his claims that the information he references supports the conclusion that he is not Matura's alias as a matter of law. *See* [Doc. 14

10

at 5]. In addition, the banking statements for Matura, *see* [Doc. 17-2; Doc. 17-3; Doc. 17-4], create a genuine issue of material fact as to whether (1) "[t]he Wells Fargo bank account that is the subject of this litigation, along with all funds that it has ever contained, has only ever belonged to Matura," [Doc. 14-1 at ¶ 5]; or (2) whether the Matura funds were used "to pay for Mordini's personal expenses," [Doc. 17 at 7–9], including (a) "the rent for his apartment, the utility bill for his apartment … , yoga class fees …, dry cleaning, and coffee" or (b) "airplane tickets [for] another business he controls," [*id*. at 8]. Mr. Mordini does not dispute any of the contents in the banking statements or explain how those documents do not create a genuine issue of material fact. *See* [Doc. 18].

Notably, neither Party addresses what law would apply to hold Mr. Mordini liable for the debts of Matura. *See* [Doc. 14; Doc. 17; Doc. 18]. Notwithstanding the Parties' failure to specifically address what rules would apply to hold Mr. Mordini liable for the debts of Matura, the court finds that Mr. Mordini ultimately has not shown that he is personally relieved from liability for the debts of Matura to Wells Fargo as a matter of law. Considering the record as a whole, this court concludes that at this juncture, there are genuine issues of material fact regarding whether Mr. Mordini was the alter ego of Matura, and therefore liable to its debts to Wells Fargo, to preclude summary judgment. *See W. Convenience Stores, Inc. v. Thielen*, No. 09-cv-02626-LTB-BNB, 2011 WL 866755, at *11 (D. Colo. Mar. 14, 2011) ("Western has set forth some evidence that the corporations acted as a single entity, out of the same offices, that Defendant Thielen is the sole owner of both corporate Defendants, that Defendant IES might have been thinly capitalized, and that corporate funds were used for non-corporate purposes. While Defendants have set forth contradictory evidence, I conclude that such conflicts of evidence constitute genuine issues of material fact, with regard to whether Defendant Thielen was the alter ego of the corporate

Defendants, in order to preclude summary judgment."); *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156 (D. Colo. 1990) (noting that, in making an alter ego determination, courts are to consider a variety of factors including "whether the corporation is operated as a separate entity," "commingling of funds and other assets," "disregard of legal formalities," and "diversion of the corporation's funds or assets to noncorporate uses"); *cf. Ziegler v. Inabata of America, Inc.,* 316 F.Supp.2d 908, 918 (D. Colo. 2004) (ruling that the plaintiff provided evidence, by a narrow margin, to withstand dismissal on summary judgment of his veil-piecing claim, but that "substantially more will be required during litigation in order to prevail"). [3]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss [Doc. 14] is **DENIED**; and

(2) Defendant shall file his Answer to the Complaint [Doc. 1] within fourteen (14) days of the entry of this Order.

DATED: January 25, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[3] Even if the court were to consider Defendant's motion under the Rule 12(b)(6) standard, it would still come to the same substantive conclusion, taking Plaintiff's well-pleaded allegations as true and drawing all inferences in favor of Plaintiff.